1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

### EASTERN DISTRICT OF CALIFORNIA

10

11  JESSIE GARCIA,

12              Plaintiff,

13      v.

14  COMMISSIONER OF SOCIAL SECURITY,

15              Defendant.

16

17

18

| | |
|---|---|
| Case No.  1:21-cv-01799-SAB | |
| ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND | |
| (ECF Nos. 21, 22) | |

19

**I.**

20

**INTRODUCTION**

21          Plaintiff Jessie Garcia ("Plaintiff") seeks judicial review of a final decision of the

22  Commissioner of Social Security ("Commissioner" or "Defendant") denying his concurrently

23  submitted applications for Social Security benefits pursuant to Title II and Title XVI of the Social

24  Security Act.   The matter is currently before the Court on the parties' briefs, which were

25  submitted without oral argument, to Magistrate Judge Stanley A. Boone.[1]   For the reasons set

26  forth below, Plaintiff's motion for summary judgment shall be denied.

27  _____

28  [1]  The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been
assigned to Magistrate Judge Stanley A. Boone for all purposes.  (ECF Nos. 11, 14, 15.)

1

**II.**

2

**BACKGROUND**[2]

3      Plaintiff concurrently filed the instant applications for Social Security benefits under Title

4   II and for Supplemental Security Income ("SSI") under Title XVI on September 11, 2019,

5   alleging disability beginning April 12, 2018.[3]  (See Admin. Rec. ("AR") 218–24, ECF Nos. 16-1,

6   16-2.)   Plaintiff's claims were initially denied on January 22, 2020, and denied upon

7   reconsideration on April 7, 2020.  (AR 96–97, 124–25, 128–33, 136–42.)  On February 22, 2021,

8   Plaintiff, represented by counsel,[4] appeared via telephonic conference, for an administrative

9   hearing before Administrative Law Judge Joan H. Deans (the "ALJ").  (AR 43–71.)  Vocational

10  expert ("VE") Denise Waddell, also testified at the hearing.  On March 31, 2021, the ALJ issued a

11  decision denying benefits.  (AR 16–42.)  On August 19, 2021, the Appeals Council denied

12  Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.

13  (AR 5–10.)

14      Plaintiff initiated this action in federal court on December 21, 2021, and seeks judicial

15  review of the denial of his applications for benefits.  (ECF No. 1.)  The Commissioner lodged the

16  administrative record on November 28, 2022.  (ECF No. 16.)  On April 11, 2023, Plaintiff filed

17  his opening brief/motion for summary judgment.  (ECF No. 21.)  On May 26, 2023, Defendant

18  filed an oppositional cross-motion for summary judgment.  (ECF No. 22.)  Plaintiff did not file

19  any reply brief, and the matter is now deemed submitted on the pleadings.

20
21   [2] For ease of reference, the Court will refer to the administrative record by the pagination provided by the Commissioner and as referred to by the parties, and not the ECF pagination.  However, the Court will refer to the parties' briefings by their ECF pagination.

22
23   [3] A claimant who is disabled and has contributed income to the Social Security program may be eligible for disability benefits under Title II.  See 42 U.S.C. §§ 401, et seq.  A claimant who is disabled with low income may be eligible
24   for SSI under Title XVI.  See 42 U.S.C. §§ 1382, et seq.  As distinct from Title II disability benefits, a claimant is eligible for SSI starting the month after the application was filed.  20 C.F.R. § 416.335.  Further, while a claimant's complete medical history (i.e., records of the claimant's medical sources covering at least the 12 months preceding
25   the month in which an application is filed) must be considered for purposes of his application, 20 C.F.R. § 416.912, the ALJ's disability determination is based on whether the claimant was under a disability as of the date the
26   application was filed.

27   [4] At the administrative level, Plaintiff was represented principally by non-attorney representative Andrew S. Youngman; at the disability hearing, Plaintiff was represented by attorney Candra Stewart.  (See AR 19, 43, 45–46.)
28   For purposes of the instant appeal, Plaintiff is represented by attorney Jonathan O. Pena, of the law firm Pena & Bromberg, PC.  (See ECF No. 21 at 1.)

# III.

# LEGAL STANDARD

## A.      The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[5] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[6] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.

> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.

> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

---

[5] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

[6] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks both disability and SSI benefits in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes the cases and regulations cited herein are applicable to both claims addressed in the instant matter.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once he has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e);  Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[7]  A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. § 404.1527(d)(2) (RFC is not a medical opinion); 20 C.F.R. § 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience.  20 C.F.R. § 416.912(g);  Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), or call a VE.  See 20 C.F.R. § 404 Subpt. P, App. 2;  Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' "  Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

---

[7] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

1

### B.     Standard of Review

2          Congress has provided that an individual may obtain judicial review of any final decision

3   of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In

4   determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by

5   the party challenging the decision.  See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

6   Further, the Court's review of the Commissioner's decision is a limited one; the Court must find

7   the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. §

8   405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is relevant

9   evidence which, considering the record as a whole, a reasonable person might accept as adequate

10  to support a conclusion."  Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002)

11  (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also

12  Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to

13  the deferential clearly-erroneous standard).  "[T]he threshold for such evidentiary sufficiency is

14  not high."  Biestek, 139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means more than a

15  scintilla, but less than a preponderance; it is an extremely deferential standard."  Thomas v.

16  CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and

17  citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the

18  ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless.  Stout,

19  454 F.3d at 1055–56.  Moreover, the burden of showing that an error is not harmless "normally

20  falls upon the party attacking the agency's determination."  Shinseki v. Sanders, 556 U.S. 396,

21  409 (2009).

22          Finally, "a reviewing court must consider the entire record as a whole and may not affirm

23  simply by isolating a specific quantum of supporting evidence."  Hill v. Astrue, 698 F.3d 1153,

24  1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).

25  Nor may the Court affirm the ALJ on a ground upon which she did not rely; rather, the Court may

26  review only the reasons stated by the ALJ in her decision.  Orn v. Astrue, 495 F.3d 625, 630 (9th

27  Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is not

28  this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment

1   for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is

2   the ALJ's conclusion that must be upheld."  Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart,

3   400 F.3d 676, 679 (9th Cir. 2005)).

**IV.**

**THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The ALJ conducted the five-step disability analysis and made the following findings of

fact and conclusions of law as of the date of the decision, March 31, 2021 (AR 22–38):

At step one, the ALJ determined Plaintiff meets the insured status requirements of the

Social Security Act through June 30, 2023, and Plaintiff has not engaged in substantial gainful

activity since April 12, 2018, the alleged onset date.  (AR 22 (citing 20 C.F.R. §§ 404.1571 et

seq.; 416.971 et seq.).)

At step two, the ALJ determined Plaintiff has the following severe impairments: chronic

liver disease with cirrhosis, major depressive disorder, and anxiety.  (Id. (citing 20 C.F.R. §§

404.1520(c); 416.920(c)).)  The ALJ also noted Plaintiff has nonsevere impairments of diabetes

with mild small fiber neuropathy, chronic hepatitis, hepatomegaly and steatosis, splenomegaly,

hypothyroidism, reflux disease, mild hearing loss, a history of ventral hernia repair, a history of

substance abuse, and low vitamin D.  (AR 22–24.)  Nonetheless, the ALJ noted she considered

any potential effects these purported impairments might cause or contribute to, in combination

with Plaintiff's other impairments to the RFC.  (Id.)

At step three, the ALJ determined Plaintiff does not have an impairment or combination of

impairments that meets or medically equals the severity of one of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1.  (AR 24–26 (citing 20 C.F.R. §§ 404.1520(d); 404.1525;

404.1526; 416.920(d); 416.925; 416.926).)  In reaching this determination, the ALJ considered

Listings 5.05 (chronic liver disease), 12.04 (depressive, bipolar and related disorders), 12.06

(anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders).

The ALJ also considered the paragraph B criteria and found that Plaintiff's mental impairments

do not result in one extreme limitation or two marked limitations in a broad area of functioning.[8]

_____

[8] The "paragraph B criteria" evaluates mental impairments in the context of four broad areas of functioning: (1)

(AR 25–26.)  More specifically, the ALJ determined Plaintiff has "moderate" limitations in the areas of "understanding, remembering or applying information," "interacting with others," and "concentrating, persisting, or maintaining pace," and a "mild" limitation in the area of "adapting or managing oneself."  (Id.)  The ALJ also considered the "paragraph C" criteria, and determined this was also not satisfied.[9]  (AR 26.)

Before proceeding to step four, the ALJ determined Plaintiff has the RFC to perform:

> **medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he can lift and carry up to fifty pounds occasionally and twenty[-]five pounds frequently.  In this regard, the claimant can sit six hours and he can stand and/or walk six hours in an 8-hour workday.  Mentally, the claimant can understand remember and carry out simple routine repetitive tasks consistent with unskilled work and he can make simple decisions at work.  Finally, he can tolerate occasional changes in routine and occasional interaction with coworkers, but cannot tolerate required interaction with the public at work.**

(AR 26–36 (citing 20 C.F.R. §§ 404.1529; 416.929; 404.1520c; 416.920c; SSR 16-3p, available at 2017 WL 5180304 (Oct. 25, 2017)) (emphasis in original).)

At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  (AR 36 (citing 20 C.F.R. §§ 404.1565; 416.965).)

At step five, the ALJ noted Plaintiff was born on January 18, 1961, and was 57 years old (which is defined an individual of advanced age) on the alleged disability onset date, and 60 years

---

understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. § Pt. 404, Subpt. P, App. 1.  The severity of the limitation a claimant has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme."  Id.  To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning.  Id.  An "extreme" limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis.  Id.  A "marked" limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.  Id.  A "moderate" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "fair."  Id.  And a "mild" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "slightly limited."  Id.

[9] To satisfy the "paragraph C" criteria, there must be a medically documented history of the existence of the mental disorder in the listing category over a period of at least two years and there must be evidence of both: (1) medical treatment, mental health therapy, psychosocial support (s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the mental disorder; and (2) marginal adjustment, that is, minimal capacity to adapt to changes in the environment or to demands that are not already part of daily life.  20 C.F.R. § Pt. 404, Subpt. P, App. 1.

old at the time of the hearing; Plaintiff has at least a high school education; and transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," regardless of whether Plaintiff has transferrable job skills.  (AR 36 (citing 20 C.F.R. §§ 404.1563; 416.963; 404.1564; 416.964; SSR 82-41, available at 1982 WL 31389 (Jan. 1, 1982); 20 C.F.R. Part 404, Subpart P, Appendix 2).)   Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as:

- Laundry worker (Dictionary of Occupational Titles ("DOT") 361.684-014), a medium-exertional work position with a specific vocational preparation ("SVP") level of 2, and approximately 97,500 jobs available in the national economy;

- Tumbler operator (DOT 369.685-034), a medium-exertional work position, SVP 2, with approximately 87,500 jobs available in the national economy; and

- Bonder (DOT 652.685-014), a medium-exertional work position, SVP 2, with approximately 44,200 jobs available in the national economy.

(AR 36–37 (citing 20 C.F.R. §§ 404.1569; 404.1569(a); 416.969; 416.969(a); 20 C.F.R. Part 404, Subpart P, Appendix 2; SSR 83-11, available at 1983 WL 31252 (Jan. 1, 1983); SSR 83-12, available at 1983 WL 31253 (Jan. 1, 1983); SSR 83-14, available at 1983 WL 31254 (Jan. 1, 1983); SSR 85-15, available at 1985 WL 56857 (Jan. 1, 1985)).)   With respect to the identified jobs, the ALJ noted the VE's testimony was consistent with the DOT and that any conflicts with regard to postural or environmental limitations have no significant impact on the relevant job base.  (AR 37 (citing SSR 83-14; SSR 85-15; SSR 96-9p, available at 1996 WL 374185 (Jul. 2, 1996); SSR 00-4p, available at 2000 WL 1898704 (Dec. 4, 2000)).)   With respect to matters such as reduced interaction with supervisors, co-workers, and the public, the ALJ noted the VE adequately addressed these additional limitations and her testimony was based on her education and professional experience.  (Id. (citing AR 316–17).)

Therefore, the ALJ found Plaintiff has not been under a disability, as defined in the Social Security Act, from April 12, 2018 (the alleged onset date), through March 31, 2021 (the date of

1  decision).  (AR 37–38 (citing 20 C.F.R. §§ 404.1520(g); 416.920(g)).)

2  **V.**

3  **DISCUSSION**

4  Plaintiff purports to assert a single issue on appeal, which he characterizes as "whether the

5  assessed mental RFC is fatally flawed as the ALJ failed to account for concrete limitations from

6  opinions she found persuasive."  (ECF No. 21 at 3.)  As the Court need not consider claims not

7  actually argued specifically and distinctly in a party's opening brief, any other challenges are

8  deemed waived.  Lewis, 236 F.3d at 517 n.13; Indep. Towers of Wash. v. Wash., 350 F.3d 925,

9  929 (9th Cir. 2003).

10  **A.      Legal Standard**

11  The RFC is an assessment of the sustained, work-related physical and mental activities the

12  claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. §§

13  404.1520(e), 404.1545(a), 416.945(a); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th

14  Cir. 1985) (RFC reflects current "physical and mental capabilities"); SSR 96-8p, at *2.  Thus, it

15  represents the maximum amount of work the claimant is able to perform based on all the relevant

16  evidence in the record.  See id.; see also 20 C.F.R. § 416.945(a)(3) (RFC determination must be

17  "based on all of the relevant medical and other evidence.").

18  As previously noted, the RFC is not a medical opinion, but a legal decision that is

19  expressly reserved for the Commissioner.  See 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c);

20  Vertigan, 260 F.3d at 1049 ("It is clear that it is the responsibility of the ALJ, not the claimant's

21  physician, to determine residual functional capacity.") (citing 20 C.F.R. § 404.1545).  And where

22  "the record contains conflicting medical evidence, the ALJ is charged with determining

23  credibility and resolving the conflict."  Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir.

24  2003); Batson, 359 F.3d at 1195; see also Lingenfelter v. Astrue, 504 F.3d 1028, 1042 (9th Cir.

25  2007) ("When evaluating the medical opinions of treating and examining physicians, the ALJ has

26  discretion to weigh the value of each of the various reports, to resolve conflicts in the reports, and

27  to determine which reports to credit and which to reject."); Morgan v. Comm'r of Soc. Sec.

28  Admin., 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for resolving

conflicts" and "internal inconsistencies" within doctor's reports); Tommasetti v. Astrue, 533 F.3d 1035, 1041–42 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence.").

In an RFC assessment, the ALJ must include all of a claimant's impairments.  20 C.F.R. §§ 404.1545, 416.945; Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009).  Because the assessment of a claimant's RFC is at the heart of steps four and five of the sequential analysis in determining whether a claimant can still work despite severe medical impairments, an improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.' "  SSR 96–8p, 1996 WL 374184 at *4.  Thus, "an RFC that fails to take into account a claimant's limitations is defective."  Valentine v. Comm'r. of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009); Martin v. Comm'r of Soc. Sec. Admin., 472 Fed. App'x 580 (9th Cir. 2012) (finding ALJ erred in formulating RFC by failing to incorporate medical opinion of claimant's work limitations without providing specific and legitimate reasons for doing so; and finding VE's testimony based on flawed RFC had no evidentiary value).  In reviewing whether an ALJ committed error in determining the RFC, the relevant inquiry is whether the medical evidence supports the ALJ's finding.  Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173–74 (9th Cir. 2008) (holding the RFC assessment adequately captures restrictions if it is consistent with the concrete limitations in the medical opinions); see also Schneider v. Comm'r, 433 Fed. Appx. 507, 509 (9th Cir. 2011) (ALJ's failure to address claimant's migraines was harmless because medical record did not support finding that migraines would affect claimant's functioning at work).

Where, as here, a claim is filed after March 27, 2017, the revised Social Security Administration regulations apply to the ALJ's consideration of the medical evidence.  See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions), 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  Under the updated regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).

Thus, the new regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions, and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources.  See 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [she] considered each medical opinion or prior administrative medical finding from one medical source individually."); Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017).  As recently acknowledged by the Ninth Circuit, this means the 2017 revised Social Security regulations abrogate prior precedents requiring an ALJ to provide "specific and legitimate reasons supported by substantial evidence in the record" for rejecting the opinion of a treating physician.  Woods v. Kijakazi, 32 F.4th 785, 788–92 (9th Cir. 2022).

Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; [and] (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. §§ 404.1520c(a), (c)(1)–(5).  The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency.  20 C.F.R. §§ 404.1520c(a), (b)(2).  Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions … will be."  20 C.F.R. § 404.1520c(c)(1). Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be."  20 C.F.R. § 404.1520c(c)(2).

Accordingly, the ALJ must explain in her decision how persuasive she finds a medical opinion and/or a prior administrative medical finding based on these two factors.  20 C.F.R. § 404.1520c(b)(2).  The ALJ "may, but [is] not required to, explain how [she] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue.  20 C.F.R. § 404.1520c(b)(2)–(3).  Further, the ALJ is "not required to

11

articulate how [she] considered evidence from nonmedical sources."  20 C.F.R. § 404.1520c(d).  Nonetheless, even under the new regulatory framework, the Court still must determine whether the ALJ adequately explained how she considered the supportability and consistency factors relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence.  See Martinez V. v. Saul, No. CV 20-5675-KS, 2021 WL 1947238, at *3 (C.D. Cal. May 14, 2021).

**B.    Relevant Record**

1.    Medical Opinions of Dr. Luck and Dr. Campbell

State agency psychological consultants E. Campbell, Ph.D. and Richard Luck, Ph.D. provided prior administrative findings based on their review of the medical record through January 16, 2020, and March 28, 2020, respectively.  (AR 73–82, 85–94, 100–08, 111–21.)

At the initial level of review, Dr. Campbell assessed Plaintiff to have the medically determinable mental impairments of "schizophrenia spectrum and other psychotic disorders," secondary to Plaintiff's chronic liver disease.  (AR 77–78, 89–90.)  Dr. Campbell determined Plaintiff did not satisfy the paragraph B criteria because he had only moderate limitations in the areas of "understanding, remembering, or applying information," "interacting with others," and "concentrating, persisting, or maintaining pace," and no limitation in the functional area of "adapting or managing oneself."  (AR 78, 90.)  More specifically, under the category of understanding and memory limitations, Dr. Campbell opined Plaintiff was moderately limited in the ability to understand and remember detailed instructions, but was not significantly limited in his ability to remember locations and work-like procedures, or understand and remember very sort and simple instructions.  (AR 80, 92.)  Under the category of concentration and persistence limitations, Dr. Campbell opined Plaintiff is moderately limited in the ability to carry out detailed instructions; to maintain attention and concentration for extended periods; and to complete a normal workday and workweek without interruptions from psychologically based symptoms without an unreasonable number and length of rest periods; however, Plaintiff was not significantly limited in his ability to carry out very short and simple instructions; to perform activities within a schedule, maintain regular attendance, and be punctual within customary

tolerances; to sustain an ordinary routine without special supervision; to work in coordination with or in proximity to others without being distracted by them; or to make simple work-related decisions. (Id.) Under the category of social interaction limitations, Dr. Campbell opined Plaintiff was moderately limited in the ability to interact appropriately with the general public; however, he was not significantly limited in the ability to ask simple questions or request assistance; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; or to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (AR 80, 93.)

Based on his findings, Dr. Campbell opined Plaintiff's mental RFC required additional limitations based on Plaintiff's ability to understand, carry out, and remember simple one and two-step instructions; his ability to make simple work-related judgments and decisions; his limited ability to respond appropriately to supervision, coworkers, and work situations; and his ability to deal with changes in a routine work setting. (AR 81, 93.)

Further, Dr. Campbell explained his opinion was less restrictive than Dr. Portnoff's opinion because Dr. Portnoff relied heavily on Plaintiff's subjective report of symptoms and limitations, which were not supported by the totality of the evidence and were inconsistent with the other evidence of record. (AR 79, 81–82, 91, 93–94.) Based in part on Dr. Campbell's opinion, a decision of nondisability was ultimately issued at the initial level of review. (AR 83, 95.)

At the reconsideration level, Dr. Luck's findings echoed those of Dr. Campbell. (AR 103–07, 116–21.) That is, Dr. Luck gave identical ratings on Plaintiff's functional abilities and limitations, mental RFC limitations, and reasoning for his findings. (AR 106–08, 117–21.) Accordingly, based in part on Dr. Luck's opinion, a decision of nondisability was again issued at the reconsideration level of review. (AR 109, 122.)

2. The ALJ's Evaluation of Drs. Luck and Campbell's Opinions

The ALJ found Drs. Luck and Campbell's opinions as to Plaintiff's mental limitations "persuasive" to the extent that "they are specialists and familiar with program rules … provided

13

1   specific references to the medical record to support their findings such as [Plaintiff's]

2   unremarkable exams even when noncompliant in care, his lack of mental healthcare and his self-

3   reported daily activities overall."  (AR 35.)  The ALJ also noted Drs. Luck and Campbell's

4   opinions are consistent with Plaintiff's "incidental mental status exams since his onset date and

5   they specifically account for the variance from Dr. Portnoff's opinion[, in that] they noted Dr.

6   Portnoff overly relied on [Plaintiff's] subjective reports, compared to his clinical exams and

7   contemporaneous observations from others since his alleged onset date."  (Id.)  The ALJ also

8   noted Drs. Luck and Campbell's opinions are consistent with the updated medical record showing

9   improved mental symptoms when sober and no findings warranting changes in care.  (Id.)

10      However, the ALJ concluded Plaintiff's mental limits originate from his depression and

11   anxiety, rather than schizophrenia, "[f]or many of the same reasons that [Drs. Luck and

12   Campbell] discounted Dr. Portnoff's opinion," and because there is no clinical support for a

13   schizophrenia diagnosis.  (Id.)  The ALJ rejected Drs. Luck and Campbell's opinions to the extent

14   she deemed them too restrictive, on the basis that the record lacks clinical findings that Plaintiff

15   has concentration deficits, learning deficits, or dyslexia that would limit him to only one-to-two-

16   steps instructions at work during the relevant period.  (Id.)  Accordingly, the ALJ concluded the

17   less-restrictive limitation to simple and repetitive work involving only simple decisions was more

18   appropriate for the RFC.  (Id.)

19      **C.    Analysis**

20      As noted, the RFC determination includes physical limitations to only lift/carry up to 50

21   pounds occasionally and 25 pounds frequently, sit up to six hours and stand and/or walk up to six

22   hours in an eight-hour day, and mental limitations to only "simple routine repetitive tasks

23   consistent with unskilled work," simple decision making, only occasional changes in routine,

24   occasional interaction with coworkers, and no interaction with the public.  (AR 26.)  The ALJ

25   explained this determination is supported by Plaintiff's lack of specialized care, his unremarkable

26   physical and mental exams, his self-reported daily activities during the period of review, and the

27   prior administrative findings.  (AR 35 (citing, "*e.g.*," AR 270–77, 278–85, 618).)

28      While Plaintiff does not the challenge the RFC determination with respect to the physical

limitations the ALJ included, he argues the ALJ's mental RFC is fatally flawed because the ALJ failed to account for additional concrete limitations identified in the medical opinions that she found "persuasive" in her decision.[10]  (ECF No. 21 at 10.)  More specifically, Plaintiff argues the ALJ failed to include the concrete limitation identified in the medical opinions of Drs. Luck and Campbell that Plaintiff was limited to one-to-two-step tasks, and she failed to include limitations to address Dr. Luck and Dr. Campbell's opinion that Plaintiff was limited in his ability to respond appropriately to supervision and work situations.  (Id. at 11–12.)  Further, Plaintiff argues the ALJ failed to explain why she did not include such limitations and this constitutes reversible error.  (Id. at 12.)  The Court finds Plaintiff's arguments to be unavailing, as follows.

> 1.   The ALJ Properly Explained Her Decision

To the extent Plaintiff argues the ALJ failed to explain her evaluation of the medical opinions of Drs. Luck and Campbell, or why she rejected the at-issue limitations, the Court finds such an argument is refuted by a plain reading of the ALJ's decision.  As previously noted, the ALJ explained she found Dr. Luck and Campbell's opinions to be persuasive to the extent that they opined Plaintiff's impairments only resulted in moderately severe limitations under the broad functioning areas identified by the paragraph B criteria.  (See AR 35.)  Such opinions were deemed supported by and consistent with Drs. Luck and Campbell's references to Plaintiff's unremarkable exams, lack of mental healthcare, activities of daily living, and "incidental mental status exams."  (Id.)  Moreover, the ALJ concluded these findings are consistent with the updated medical record showing improved mental symptoms when sober and no findings warranting changes in care.  (Id.)  The ALJ also agreed with Drs. Luck and Campbell's discounting of Dr. Portnoff's opinion on the basis that he overly-relied on Plaintiff's subjective reports and his opined limitations were overly-restrictive in comparison to the clinical exam data.  (Id.)

It is important to note that, while the ALJ found Drs. Luck and Campbell's opinions to be persuasive in the aforementioned areas, she did not wholesale adopt their opinions, as Plaintiff at

---

[10] Because Plaintiff only challenges the RFC determination with respect to his mental limitations and not the physical ones, he has waived any challenge with respect to the ALJ's findings related to his physical impairments and limitations resulting therefrom, Lewis, 236 F.3d at 517 n.13; Indep. Towers of Wash., 350 F.3d at 929, and the Court shall only address the ALJ's decision with respect to Plaintiff's mental limitations herein.

times appears to suggest. Rather, the ALJ plainly rejects Drs. Luck and Campbell's diagnosis of "schizophrenia spectrum and other psychotic disorders," based on her determination that Plaintiff's "mental limits originate from his depression and anxiety rather than schizophrenia," as there is no clinical support for a schizophrenia diagnosis. (Id.) Indeed, the ALJ previously determined at steps two and three of the disability inquiry (findings which Plaintiff has not challenged) that Plaintiff's severe mental impairments include major depressive disorder and anxiety, but that his allegations of dyslexia, a learning disorder, and schizophrenia "do not constitute medically determinable impairments." (AR 22, 24.) The ALJ indicates Drs. Luck and Campbell similarly over-relied on Plaintiff's allegations and not the clinical data when they assessed the schizophrenia diagnosis. (AR 35.) Thus, at bottom, the ALJ did not accidentally fail to include the one-to-two-step task limitation in the RFC determination or explain its omission; rather, she expressly rejected the limitation as identified by Drs. Luck and Campbell, and she plainly explained her reasons for finding this portion of their opinions to be unpersuasive. Plaintiff's contention that the ALJ "failed to account for concrete limitations stemming from opinions [s]he found persuasive" is therefore incorrect.

2.      The ALJ Properly Rejected the One-to-Two-Step Tasks Limitation

To the extent Plaintiff argues the ALJ's rejection of the one-to-two-step tasks limitation is not supported by substantial evidence, and that the ALJ improperly substituted her lay opinion for that of the medical professionals (ECF No. 21 at 12–13), the Court again disagrees.

The ALJ expressly rejected Drs. Luck and Campbell's opinions as to the one-to-two-steps limitation as "too restrictive" and inconsistent with the medical record. (AR 35.) More specifically, the ALJ noted the proposed limitation arose from Dr. Portnoff's medical opinion and diagnosis of schizophrenia, both of which she rejected as unpersuasive, inconsistent with the medical record, lacking any medical basis, and based on an over-reliance on Plaintiff's allegations. (Id.)

Importantly, the ALJ strongly rejected Plaintiff's symptom allegations based on a negative credibility assessment that barely falls short of expressly finding Plaintiff malingered. The ALJ provided multiple reasons for discounting Plaintiff's testimony as inconsistent with the medical

16

record.  For example, the ALJ noted Plaintiff's most severe objective medical examination results only coincided with time periods in which Plaintiff was either testing positive for use of cannabis and illicit narcotics or blatantly refusing to take a drug test, or was noncompliant with his diabetic treatment.  (AR 27–30 (citing AR 450–51, 463, 487, 492, 495, 514–20, 616, 619, 626); AR 32 (noting Plaintiff refused a drug test in November 2019, and tested positive in April 2020).)  The ALJ also pointedly commented on the occurrence of consistently unremarkable examination results (see AR 31 (citing AR 442, 445, 464, 474, 477, 482, 487, 491, 510, 516, 524, 550, 609, 617–18, 622, 625–26, 628, 632)), *except for* the time periods in which Plaintiff's state disability benefits were about to expire, or when Plaintiff was examined by consulting physicians in connection with the instant disability application (AR 29–30 (citing AR 377, 448, 463, 465, 474, 482)).  Further, the ALJ identified evidence from the medical notes which suggests Plaintiff attempted to manipulate the medical system to obtain/retain disability benefits.  For example, the ALJ noted Plaintiff first attended a medical consultation examination with Dr. Wagner on December 6, 2019, at which he presented normal behavior, cooperative and pleasant attitude, and was evasive about drug use; however, only one week later, Plaintiff attended a consultation examination with Dr. Portnoff, at which time he reported experiencing panic attacks and hallucinations of little green aliens, and he obtained the schizophrenia diagnosis upon which the currently at-issue one-to-two-step tasks limitation is based.  (AR 31 (comparing AR 521–27 with AR 514–20).)  In another example, the ALJ noted the fact that Plaintiff abruptly changed primary care physicians when his original doctor would not "take care" of his disability paperwork.  (AR 28 (citing AR 584)).  In addition, the ALJ noted Plaintiff's multiple reporting inconsistencies in the record.  (See, e.g., AR 27 (noting Plaintiff testified he is sober since 2019 but would also like to secure a license for marijuana use at this time); AR 27, 29 (citing AR 464, 474, 482) (noting, at the time of his disability application, Plaintiff reported his work as a truck driver ended when he lost his license due to passing out because of his hand cramps; whereas, he reported to the State of California his primary reason for loss of license was vision problems; whereas, the record shows Plaintiff actually lost his license after emergent health care providers reported his illicit drug use to the authorities); and AR 22–23 (citing AR 570) (despite Plaintiff's alleged disability onset date

of April 12, 2018, Plaintiff requested clearance to return to commercial driving in November 2019, and appears to have not returned to work at that time only due to refusing to take a drug test).)

In sum, the ALJ points to numerous examples in the cumulative record to support her finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms are not entirely consistent with the medical evidence and other evidence of record (AR 28).  See Hairston v. Saul, 827 Fed. App'x 772, 773 (9th Cir. 2020) (quoting Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008) (affirming ALJ's determination claimant's testimony was "not entirely credible" based on contradictions with medical opinion)) ("[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); see also Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (ALJ may reject symptom testimony based on ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, internal contradictions in the claimant's statements and testimony, and other testimony by the claimant that appears less than candid).  The medical records and internal contradictions cited by the ALJ in support of her adverse credibility determination constitute substantial evidence.  See id.; Tommasetti, 533 F.3d at 1039.

Furthermore, having discounted Plaintiff's symptom testimony as inconsistent with the longitudinal record[11]—a significant finding which Plaintiff has not challenged—the ALJ's rejection of the medical opinions of Dr. Portnoff and, to some extent, Drs. Luck and Campbell, that heavily relied on such testimony was proper.  See Morgan, 169 F.3d at 602 ("A physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly

---

[11] The Court notes that, even though the ALJ reached an adverse credibility determination against Plaintiff and discounted his testimony, based on the findings that Plaintiff's symptoms only tended to wax and wane during times of financial stress, noncompliance in diabetic and mental healthcare, and at times coincident to illicit drug use; that the vast majority of his examinations were unremarkable; that his activities did not support the alleged severity of his symptoms; that his symptoms were adequately managed with the conservative treatment of medication and diet; that he rarely and only sporadically sought medical treatment; and that his statements were inconsistent with the record, the ALJ nevertheless considered Plaintiff's reported symptoms of severe depression, anxiety and PTSD by incorporating generous mental limitations into the RFC determination which limit Plaintiff to simple, repetitive work that involves no more than simple decision making, only occasional changes in routine, and limits involving interaction with others at work.

18

discounted."); Tommasetti, 533 F.3d at 1041  (ALJ's adverse credibility determination supported rejection of treating physician's opinion because it was primarily based on claimant's subjective comments concerning his condition); see also Bray, 554 F.3d at 1228 (ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings.").

The ALJ also identified substantial evidence in the medical record to support her findings that Plaintiff's functional limitations were of a moderate severity that warranted a "simple routine repetitive tasks" limitation (as well as limitations to simple decisions, only occasional changes in routine, occasional interaction with coworkers, and no public interaction), but did not warrant the "one-to-two-step tasks" limitation opined by Drs. Luck and Campbell.  For example, the ALJ determined Plaintiff was only moderately limited in his ability to understand, remember, or apply information because he could perform simple maintenance, prepare meals, manage his own medications, appointments and finances, could shop, drive, read, watch TV and complete 2000-piece puzzles.  (AR 25 (citing AR 270–85).)  Plaintiff's ability to provide information about his health and work history, follow instructions and answer questions from healthcare providers, and make his own healthcare-related decisions during the relevant period also supports only a moderate limitation.  (Id.)

The ALJ also noted Plaintiff's mental examinations consistently showed normal cognition, good attention and concentration, and intact memory function.  (Id. (citing AR 442, 445, 464, 474, 477, 482, 487, 491, 510, 516, 524, 609, 617–18, 622, 625–26, 628, 632).)  The ALJ determined Plaintiff's ability to concentrate, persist, or maintain pace was only moderately limited for these same reasons.  (Id. (citing AR 442, 445, 464, 474, 477, 482, 487, 491, 510, 516, 524, 609, 617–18, 622, 625–26, 628, 632).)  The ALJ determined Plaintiff has only a moderate limitation in his ability to interact with others because he reportedly got along with others, shopped, spent time with friends and family, dealt appropriately with authority, had no more than conservative care for his anxiety symptoms, and during mental examinations, he consistently presented a cooperative attitude, normal speech and thought patters, had good eye contact, normal motor activity and no thoughts of harm to self or others.  (Id. (citing AR 442, 445, 464, 474, 477,

482, 487, 491, 510, 516, 524, 609, 617, 618, 622, 625–26, 628, 632).)

The ALJ further noted that, even at times when Plaintiff was not taking his medications (as in November 2019), he was able to build puzzles, read, and "provide detailed, cogent and responsive, and organized hand-written answers to questions asked over an 8-page questionnaire" without assistance. (AR 27 (citing AR 278–85, 566).) The ALJ also noted the record shows that, with sobriety and diabetic management, Plaintiff's acute physical and mental symptoms abated within twelve months of his alleged onset date. (AR 28 (citing AR 450, 451, 463, 470, 494).) Further, Plaintiff requires only conservative treatment—i.e., medications and diet—to manage his symptoms. (Id. (citing AR 619, 622, 626, 634).) Indeed, after his state disability benefits were extended, providers noted Plaintiff contemporaneously reported he had no mental deficits and was in no pain, and demonstrated normal physical and mental examinations only a few months after his return to compliance in diabetic care. (AR 29–30 (citing AR 463).) Accordingly, Kaur Simranjit, FNP indicated Plaintiff's anxiety and depression warranted only a one-month extension in his state disability benefits, and noted Plaintiff should find other work if not cleared to drive, without suggesting significant physical or mental limits in this regard. (AR 30 (citing AR 448).) Finally, the ALJ noted the medical record did not contain any evidence of diagnosis or treatment for dyslexia, learning disabilities, or frequent panic attacks to support Plaintiff's allegations of such.

Based on the foregoing, the Court finds the ALJ properly incorporated the functional limitations supported by the properly-weighted medical evidence into the RFC determination, and explained her basis for rejecting the one-to-two step tasks limitation, based on substantial evidence in the record. See Stubbs-Danielson, 539 F.3d at 1173–74. Plaintiff's argument that the ALJ's rejection of the limitation to one-to-two-step tasks "was conclusory and unsupported by substantial evidence" (ECF No. 21 at 12) is, therefore, unavailing.

3.      The ALJ Did Not Impermissibly "Play Doctor"

Plaintiff's argument that the ALJ improperly substituted her own opinion for that of the medical professionals (id. at 13) is also unavailing. As previously noted, the RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20

C.F.R. §§ 404.1527(d)(2), 404.1546(c); Vertigan, 260 F.3d at 1049 ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.") (citing 20 C.F.R. § 404.1545).  It is therefore squarely within the ALJ's province to synthesize the medical evidence, resolve conflicts and ambiguities in the medical testimony, and determine credibility.  See Andrews, 53 F.3d at 1039; see also Lingenfelter, 504 F.3d at 1042 ("When evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine which reports to credit and which to reject."); Morgan, 169 F.3d at 603 (holding ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports); Tommasetti, 533 F.3d at 1041–42 ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."); Benton, 331 F.3d at 1040 (where "the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict.").  Hence, "[t]he ALJ's RFC determination need not precisely reflect any particular medical provider's assessment." Althoff-Gromer v. Comm'r of Soc. Sec., No. 2:18-cv-00082-KJN, 2019 WL 1316710, at *13 (E.D. Cal. Mar. 22, 2019); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222–23 (9th Cir. 2010); Chavez v. Colvin, 654 Fed. App'x 374, 375 (10th Cir. 2016) (ALJ need not "parrot … exact descriptions of … limitations" to reach an RFC determination consistent with the medical record and claimant's limitations).

Indeed, not only does the RFC determination fall exclusively under the ALJ's province; the Regulations and controlling legal authorities *require* an ALJ to evaluate the objective medical evidence in the record.  See 20 C.F.R. § 404.1520b ("After we review all of the evidence relevant to your claim, we make findings about what the evidence shows.").  This necessarily includes consideration of "medical signs" (which are "shown by medically acceptable diagnostic techniques") and "laboratory findings" (including MRIs and x-rays).  See 20 C.F.R. §§ 404.1513(a)(1), 404.1502(c) (defining laboratory findings), 404.1502(g) (defining medical signs).  And, as recently noted by the Ninth Circuit, an ALJ is presumed  to be "capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." Farlow v. Kijakazi, 53 F.4th 485,

488 (9th Cir. 2022) (rejecting claimant's argument that the ALJ improperly discounted physician's opinion in favor of the ALJ's own lay, non-expert opinion).  Thus, contrary to what Plaintiff appears to suggest, the ALJ was not required to obtain additional medical opinions after rejecting, in part, limitations opined by Drs. Luck and Campbell, and she was not improperly "playing doctor" by rejecting the one-to-two-step tasks limitation.

Alternatively, Plaintiff argues the ALJ's decision was not supported by substantial evidence because there exists "plenty of evidence"—such as Plaintiff's symptom testimony— which supports the limitations assessed by Drs. Luck and Campbell.  (See ECF No. 21 at 13.) Plaintiff's argument, however, appears to be a request for the Court to reweigh the medical evidence based on an attempt to present an alternative interpretation of the evidence.  But this Court must defer to the decision of the ALJ where evidence exists to support more than one rational interpretation.  See Gardner v. Barnhart, 73 Fed. App'x 193, 195 (9th Cir. 2003) ("When the evidence presented could support either affirming or reversing the Commissioner's conclusions, this court cannot substitute its own judgment for that of the Commissioner.  Here, … the ALJ's conclusions are supported by substantial evidence.  The ALJ supported his evaluation with articulated analysis of the evidence and citation to specific substantial evidence in the record. He cited specific reports for his conclusions and gave sufficient legitimate reasons for rejecting others.  This is all that he is required to do."); see also Tommasetti, 533 F.3d at 1038 (the court will uphold the ALJ's conclusion where the evidence is susceptible to more than one rational interpretation).  "As [the Court] cannot say that the ALJ's interpretation of the available evidence was not rational, the ALJ's conclusions were supported by substantial evidence."  Shaibi v. Berryhill, 883 F.3d 1102, 1108 (9th Cir. 2017).  Accordingly, the Court will not disturb the ALJ's decision with respect to her evaluation of the medical and non-medical record and RFC determination.

4.   The ALJ Sufficiently Accounted for Plaintiff's "Impaired Ability to Respond Appropriately to Supervision and Work Situations"

Plaintiff's argument that the ALJ failed to account for his impaired ability to respond appropriately to supervision and work situations in the RFC determination (ECF No. 12 at 11–12)

is equally unavailing.  As Plaintiff notes, the ALJ must account for "concrete limitations" in the RFC that are supported by the properly-weighted medical evidence.  See Stubbs-Danielson, 539 F.3d at 1173–75.  The limitation asserted by Drs. Luck and Campbell that Plaintiff identifies, "limited in ability to respond appropriately to supervision and work situations" (AR 107), however, is not a concrete limitation because it does not endorse "a particularized accommodation" relating to the purported impaired ability.  See Stubbs-Danielson, 539 F.3d at 1175 (affirming RFC as addressing "the only concrete limitations" identified by physicians and indicating a "moderately limited … ability to perform at a consistent pace without an unreasonable number and length of rest periods" was not a particularized accommodation).  Further, as noted, the only concrete limitation Plaintiff identifies is the one-to-two-step tasks limitation.  Here, however, the ALJ rejected that specific restriction, and the Court has found the ALJ's decision was properly supported by substantial evidence in the record.

To the extent Plaintiff generally argues the ALJ failed to reasonably incorporate the purported limitation of "respond[ing] appropriately to supervision and work situations" into the RFC, the Court again disagrees.  Notably, because the ALJ must synthesize all of the medical evidence from the cumulative record, see Lingenfelter, 504 F.3d at 1042, "[t]he ALJ's RFC determination need not precisely reflect any particular medical provider's assessment."  Althoff-Gromer, 2019 WL 1316710, at *13; Turner, 613 F.3d at 1222–23; see also Chavez, 654 Fed. App'x at 375.  Importantly, the Ninth Circuit has emphasized the relevant inquiry into the propriety of the translation of a "moderate" functional area (as in the paragraph B criteria) to a concrete RFC functional limitation is whether the RFC limitations are supported by the properly-weighted medical evidence.  See Stubbs-Danielson, 539 F.3d at 1173–74.

Here, the ALJ assessed Plaintiff to have moderate functional limitations in three of the paragraph B criteria functional areas ("understanding, remembering, or applying information," "interacting with others," and "concentrating, persisting, or maintaining pace").  (AR 25–26.) Drs. Luck and Campbell similarly opined, with respect to specific limitations related to "supervision," that Plaintiff was "not significantly limited" in his ability to work in coordination with or in proximity to others, accept instructions and respond appropriately to criticism from

supervisors, get along with coworkers, or maintain socially appropriate behavior; whereas he was only moderately limited in ability to remember and carry out detailed instructions.  (See AR 106–07.)  Further, the doctors opined that, regarding the category of social interaction limitations, the only area in which Plaintiff was moderately limited was with respect to his ability to interact appropriately with the general public.  (AR 107.)  Taking these limitations into account, the ALJ limited Plaintiff to simple routine repetitive tasks consistent with unskilled work, simple decisions, occasional changes in routine, occasional interaction with coworkers, and no required interaction with the public.  (AR 25–26.)  Ninth Circuit caselaw indicates this is sufficient to address "moderate" mental limitations.

In general, the Ninth Circuit has determined limitations to "simple" work sufficiently addresses "moderate" mental limitations.   See, e.g., Stubbs-Danielson, 539 F.3d at 1169 (limitation to "simple, routine, repetitive" tasks accommodates medical opinions that a claimant has a "slow pace" and "several moderate limitations in other mental areas."); id. at 1174 (elaborating on how limitations regarding ability to "carry out very short simple instructions," "maintain attention and concentration for extended periods," and "sustain an ordinary routine without special supervision" were all related to the functional area of "concentration, persistence, or pace," and these restrictions were adequately captured by RFC limitation to "simple tasks"); see also Rogers v. Comm'r Soc. Sec. Admin., 490 Fed. App'x. 15, 17–18  (9th Cir. 2012) (RFC assessment that claimant could perform work limited to simple routine tasks performed in unskilled work was consistent with the medical opinion that she was moderately limited in abilities to understand, remember, and carry out detailed instructions and to respond appropriately to changes in the work setting, and adequately captured all of the claimant's limitations); Thomas, 278 F.3d at 953, 955, 958 (if a job is unskilled, the tasks are very simple and may be performed by a claimant with "mild to moderate deficiencies of concentration"); Sabin v. Astrue, 337 Fed. App'x. 617, 620–21 (9th Cir. 2009) (ALJ properly assessed medical evidence when determining—despite moderate difficulties as to concentration, persistence, or pace—the claimant could perform simple tasks on a consistent basis); Vezina v. Barnhart, 70 Fed. App'x 932, 934 (9th Cir. 2003) (ALJ's RFC hypothetical restrictions of "low-stress work with limited contact

with peers, supervisors, and the public" sufficiently encompassed medical opinion that claimant needed "to do simple tasks, [and] someone had to organize them for her," because identified jobs all "involve[d] simple, repetitive, relatively unskilled tasks," which would not require self-direction or organization on claimant's part).  Plaintiff's argument relies on a handful of district court cases which do not directly address the same limitations identified here, while failing to address the foregoing Ninth Circuit authorities.

Even more specifically, the Ninth Circuit and courts in this circuit have concluded a limitation to "simple tasks" also adequately encompasses moderate limitations with respect to social functioning.  See Langford v. Astrue, No. CIV S–07–0366 EFB, 2008 WL 2073951, at *7 (E.D. Cal. May 14, 2008) ("unskilled work … accommodated [the claimant's] need for 'limited contact with others' "); Garza v. Comm'r, No. 1:21-cv-00403-BAK (SAB), 2022 WL 2974691, at *10 (E.D. Cal. Jul. 27, 2022) (citing Rogers, finding limitations to unskilled work, simple and routine tasks, frequent interaction with supervisors and co-workers and occasional interaction with the public more than sufficiently addressed moderate mental limitations, including limitations regarding interacting with others); Ramirez v. Comm'r, No. 1:18-cv-01322-SAB, 2019 WL 4201437, at *13, *18 (E.D. Cal. Sept. 5, 2019) (finding "a limitation to simple and routine tasks adequately encompasses a moderate limitation on social functioning."); Gann v. Berryhill, No. 1:17-cv-00325-SKO, 2018 WL 2441581, at *10–12 (E.D. Cal. May 31, 2018) (RFC limitation to "simple, routine tasks" performed in unskilled work "adequately encompasses moderate limitations with social functioning including getting along with peers and responding appropriately to supervisors."); Messerli v. Berryhill, No. 1:16-CV-00800-SKO, 2017 WL 3782986, at *11 (E.D. Cal. Aug. 31, 2017) (finding limitation to "simple repetitive tasks" accounted for moderate limitations in claimant's ability to accept instructions from supervisors, interact appropriately with coworkers and the public, perform work on a consistent basis, and to complete a normal workday and workweek); Menges v. Berryhill, No. 1:16-cv-01766-BAM, 2018 WL 1567786, at *8 (E.D. Cal. Mar. 30, 2018) ("A restriction to simple, repetitive tasks amply accounts for any moderate/mild limitations in mental or social functioning."); Henry v. Colvin, No. 1:15-cv-00100-JLT, 2016 WL 164956, at *18 (E.D. Cal. Jan. 14, 2016) ("the

restriction to simple tasks encompasses [the claimant's] moderate limitations with … social interaction"); Shaibi, 883 F.3d at 1107 (holding the ALJ adequately accounted for doctor's opinion about claimant's "moderate" social limitations by limiting him to "simple routine tasks in a non-public setting, with 'occasional' interaction with co-workers").

On this record and the foregoing legal authorities, the Court concludes the ALJ adequately addressed Plaintiff's moderate mental limitations with respect to "respond[ing] appropriately to supervision and work situations" by incorporating restrictions of simple routine repetitive tasks consistent with unskilled work, simple decisions, occasional changes in routine, occasional interaction with coworkers, and no interaction with the public into the RFC determination. (AR 25–26.)

### 5. Reliance on VE Testimony

Finally, Plaintiff argues the ALJ presented an incomplete hypothetical to the VE, which did not include the aforementioned limitations, and therefore resulted in unreliable testimony as to available jobs in the national economy that Plaintiff could perform. (ECF No. 21 at 13–14.) On this basis, Plaintiff argues the ultimate finding of nondisability was made in error and remand is required.

For the vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question that comprises all of the claimant's impairments. Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011). However, the ALJ need not include "each and every symptom" of the claimant's impairments, Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1270 (11th Cir. 2007), or medical "findings ... that the ALJ had properly rejected as unsupported." Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir. 2004).

Here, the Court has determined the ALJ properly evaluated the medical opinion evidence, including Dr. Luck and Dr. Campbell's opinions, and her RFC determination was appropriately supported by substantial evidence. The instant step five argument merely rehashes Plaintiff's prior arguments and therefore fails. See Stubbs-Danielson, 539 F.3d at 1175–76 (rejecting a step five argument that "simply restates" arguments about medical evidence and testimony); Hairston,

827 Fed. App'x at 773 (summarily rejecting claimant's arguments that RFC and step-five findings were unsupported by substantial evidence as "derivative of her preceding arguments addressed and rejected above."); <u>see also</u> <u>Embrey v. Bowen</u>, 849 F.2d 418, 423 (9th Cir. 1988) (acknowledging there is no requirement that testimony for which the ALJ has provided specific and legitimate reasons to discount be included in the hypothetical given the VE).

## VI.

## CONCLUSION AND ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.    Plaintiff's motion for summary judgment appealing the decision of the Commissioner of Social Security (ECF No. 21) is DENIED;

2.    Defendant's oppositional briefing and cross-motion for summary judgment (ECF No. 22) is GRANTED; and

3.    The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Jessie Garcia and close this case.

IT IS SO ORDERED.

Dated:   **June 22, 2023**

UNITED STATES MAGISTRATE JUDGE